IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>$25,500 UNITED STATES CURRENCY,<br><br>             Defendant,<br><br>and<br><br>GREGORY MCDOUGLE-BURNS,<br><br>             Claimant. | **8:22CV370**<br><br><br>**MEMORANDUM AND ORDER** |

In this ancillary civil action, claimant Gregory McDougle-Burns ("McDougle-Burns") seeks to recover $25,500 in United States currency he claims to be his. For the reasons stated below, his claim is denied.

## I.    BACKGROUND

On July 27, 2022, McDougle-Burns filed a claim seeking return of $25,500 out of $28,000 in United States currency that was located and seized during the execution of a federal search warrant at 2716 Crown Point Avenue, Omaha, Nebraska ("Crown Point"), on June 16, 2022. As a result, on October 26, 2022, the government filed this civil complaint against the $25,500 in United States currency, alleging that the cash was proceeds and/or facilitated drug trafficking related to the criminal action here.

On May 16, 2023, McDougle-Burns' brother, Dre'Shaun Burns ("Burns") was originally charged in a two-count Indictment charging conspiracy to distribute and possession with intent to distribute 100 grams or more of fentanyl analogue (Count I) and use or possession of a firearm in furtherance of drug trafficking (Count II). *See United*

*States v. Dre'Shaun E. Burns*, 8:23CR120.  That Indictment included a forfeiture allegation for the $28,000 in United States currency, seized from Crown Point.

In November of 2024, Burns pleaded guilty to two counts under an Information. Count I charged him with conspiracy to distribute and possession with intent to distribute 10 grams or more of fentanyl analogue and Count II still charged him with use or possession of a firearm in furtherance of drug trafficking.  The forfeiture allegation in the Information remained the same.

Burns was sentenced to a term of imprisonment of 108 months on Count I and 60 months on Count II to be served consecutive to the sentence imposed on Count I of the Information (for a total of 168 months), followed by supervised release for a term of 5 years on Count I and 5 years on Count II to run concurrently.  As part of the plea agreement (Filing No. 57) Burns agreed to the following facts:

> 18. The $28,000 in United States currency seized from defendant's bedroom during the execution of the search warrant on June 16, 2022, was exclusively Burns' currency. Burns received the $28,000 as drug proceeds from his drug trafficking activities and he used the $28,000 to facilitate his drug trafficking activities.

> 19. Burns agrees to forfeit any and all rights to the $28,000 in United States currency and further agrees this currency can be forfeited—either administratively or judicially.

A Preliminary Order of Forfeiture was entered in that case (Filing No. 61 in 8:23CR120).

The Court held a hearing on this ancillary matter on August 19, 2025.  McDougle-Burns testified on his own behalf and offered exhibits.  The government called two witnesses, FBI Special Agent Michael Netherton, who participated in the Crown Point search, and Karen Bertram, a forensic accountant with the FBI.

## II.    DISCUSSION

Federal Rule of Criminal Procedure 32.2(c)(1) allows a third party to file a petition asserting an interest in property designated to be forfeited.  If a claimant does so, the Court

is required to conduct an ancillary proceeding. In such a proceeding, the claimant bears the burden of proof by a preponderance of the evidence. *United States v. Mills*, 18 F.4th 573, 576 (8th Cir. 2021); *United States v. Porchay*, 533 F.3d 704, 709 (8th Cir. 2008).

McDougle-Burns, must prove, as relevant here that he "has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6).

McDougle-Burns timely filed his petition under § 853(n)(2). That petition began proceedings ancillary to Burns's criminal case to determine ownership of the claimed $25,500. *See United States v. Mills*, 18 F.4th at 575-76. This case was stayed (by agreement of the parties) until the resolution of Burns's criminal case.

At the ancillary hearing, McDougle-Burns testified that he had accumulated cash from earlier employment as a personal banker at First National Bank of Omaha for five years, to start a sports-agent business. He claims the $25,500 existed and had been saved as cash since the end of 2016. He claims that the cash was kept at Crown Point in the childhood bedroom that he shared with his brothers, including Burns. While neither McDougle-Burns or either of his two brothers still resided at Crown Point during the time in question, they all apparently used the bedroom from time to time, apparently for storage. According to McDougle-Burns, each of his brothers had separate totes.

McDougle-Burns testified he kept two banded bundles, each containing $10,000, in a plastic tote he stored in the Crown Point bedroom.[1] He testified he kept the tote in a padlocked closet in that bedroom which he referred to as his "childhood closet." He also

---

[1] He also claimed that two $100 bills were placed in his tote adjacent to the two bundles of $10,000.

claims he kept the additional $5,500 in a separate safe belonging to him in that same closet.[2] McDougle-Burns testified and explained how and when he accumulated that cash. The government provided forensic evidence indicating that it was highly unlikely McDougle-Burns could have accumulated the cash (or non-cash amounts he claimed in savings) in the time or manner he described.

The evidence as to the source of any of the funds McDougle-Burns had or claimed to have, is at best conflicting.

The Court is skeptical of McDougle-Burns's claim to the $25,500 for several reasons. First, when the officers executed the search warrant, they found the safe in which McDougle-Burns alleged the $5,500 was kept. The safe was forced it open but found no cash. Neither was the safe found within the locked closet which McDougle-Burns claimed he utilized for his property. Both the safe and the tote were found next to the bed in the Crown Point bedroom. When a claimant asserts an interest in cash in a certain location and no cash is there, there is nothing to recoup.

Second, two banded bundles of $10,000 each were in fact in a plastic tote in the bedroom. Officers found them in that tote along with another identically banded bundle totaling $8,000.[3] In other words, the $28,000 that is subject to forfeiture was <u>all</u> found in the same location, in the same tote, and in close proximity to some of the drugs with which Burns was charged. McDougle-Burns makes no claim to that $8,000 yet tries to claim the $20,000 from the tote plus the phantom $5,500 he testified was in the safe–but it wasn't.[4]

---

[2]The $5,500 was first described by McDougle-Burns as part of his business startup nest egg. He later testified he saved it to help his mother purchase a new house.

[3]No venue items (such as mail, credit cards, identification cards, etc.) identifying McDougle-Burns were found in the bedroom. The only venue items found in the bedroom were for Burns.

[4]In addition, no loose $100 bills were found in the tote.

In addition to that evidence, McDougle-Burns claims the reason he stashed $25,500 at his mother's home is that he had always learned that you should keep twenty percent of your total savings in cash.  The problem is that although McDougle-Burns testified that he had met his goal in 2016 to have twenty percent of his savings in cash, he never showed the other eighty percent ever existed.  That ratio would have required approximately $100,000 in savings in bank or other accounts apart from the claimed cash.  He provided no evidence to support that.

Having reviewed the evidence and arguments presented by the parties in this matter, the Court finds that McDougle-Burns has not established by a preponderance of the evidence that $25,500 of the $28,000 seized was his.  Based upon the foregoing, it is hereby ordered that the petition of McDougle-Burns seeking return of the $25,500 in United States currency is denied.

IT IS SO ORDERED.

Dated this 27th day of August 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge